# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRYSTINA OGDEN, o/b/o K.M.R., *Plaintiff*, v. SOCIAL SECURITY ADMINISTRATION, *Defendant*. | CIVIL ACTION NO. 16-00805 |

**PAPPERT, J.**                                                                 **March 5, 2018**

## MEMORANDUM

Plaintiff Chrystina Ogden, pursuant to 42 U.S.C. § 1383(c)(3) [1], seeks judicial review of a decision by the Commissioner of Social Security denying her claim on behalf of K.M.R., her minor child, for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* The Administrative Law Judge's decision was upheld by the Appeals Council and Magistrate Judge Hart subsequently recommended that Ogden's request for review be denied. Ogden filed three objections to Judge Hart's Report and Recommendation ("R&R") and now argues that the Commissioner's decision should be overturned because Ogden did not knowingly waive her right to an attorney and the ALJ erred in finding that K.M.R. did not exhibit marked impairments in the domains of acquiring and using information and interacting and relating with others. For the reasons below, the Court overrules Ogden's objections to the R&R and grants judgment in favor of the Commissioner.

---

[1]     42 U.S.C. § 1383(c)(3) incorporates by reference 42 U.S.C. § 405(g).

I

A

K.M.R. was born on August 26, 2008. (R. 76.)² On October 1, 2012, Ogden filed an application for SSI on her behalf. (R. 76.) K.M.R.'s SSI application alleged speech and learning delays as well as behavioral impairments. (R. 88–97.) On March 7, 2013, K.M.R.'s application for SSI was denied. (R. 50.) Ogden filed a request for a hearing which was held on July 31, 2014 before ALJ Paula Garrety. (R. 24.) On October 6, 2014, Judge Garrety found that K.M.R. had "not been under a disability within the meaning of the Social Security Act…." (R. 9.) In reaching her conclusion, the ALJ explained that she had considered "objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community)." (R. 14.)

Relying on the record evidence, the ALJ found that K.M.R. had not engaged in substantial gainful activity during the relevant time period. (R. 12.) She concluded that K.M.R.'s attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD") are "severe impairments" but found that neither K.M.R.'s ADHD nor her ODD were impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. §§ 416.924, 416.925 or 416.926. (*Id.*) Finally, the ALJ concluded that K.M.R. had: (1) "less than marked limitation in acquiring and using

---

² The record, consisting of 293 numbered pages, was uploaded to ECF. *See* ECF Nos. 13–13-8. The Court will cite to the record page numbers rather than the specific ECF document identifiers.

information;" (2) "less than marked limitation in attending and completing tasks;" (3) "less than marked limitation in interacting and relating with others;" (4) "no limitation in moving about and manipulating objects;" (5) "no limitation in the ability to care for herself" and (6) "no limitation in health and physical well-being." (R. 16–20.) As a result of these conclusions, the ALJ determined that K.M.R. "does not have an impairment or combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning" and therefore K.M.R. was found to be ineligible to receive SSI. (R. 20.)

The Appeals Council denied Ogden's request for review. (R. 1–6.) On February 17, 2016, Ogden's complaint was filed in this action after she was granted leave to proceed *in forma pauperis*. (Compl., ECF No. 3.) She filed a brief and statement of issues in support of her request for review on August 2, 2017 and the Commissioner filed a response on September 5, 2017. (Pl.'s Br., ECF No. 17, Def.'s Resp., ECF No. 18.) Magistrate Judge Hart issued his R&R recommending denial of Ogden's request for review on October 12, 2017. (R&R, ECF No. 23.) He found that Ogden knowingly waived her right to counsel at the administrative hearing and that substantial evidence supports the ALJ's conclusions that K.M.R. has less than marked limitations in the domain of acquiring and using information and in the domain of interacting and relating with others. (*Id.* at 4–9.) Ogden filed objections on October 27, 2017. (Pl.'s Objs., ECF No. 24.) The Commissioner filed a response on November 8, 2017. (Def.'s Resp. to Pl.'s Objs., ECF No. 26.)

B

The Court has reviewed the decision of the ALJ along with the entire

administrative record and summarizes here the evidence relevant to Ogden's claim that she did not knowingly waive her right to counsel and her request for review of the ALJ's functional equivalence determination relevant to K.M.R.'s ADHD and ODD.

i

Prior to the hearing before the ALJ, the Office of Disability Adjudication and Review mailed Ogden a confirmation notice that also informed her of her right to representation. (R. 57.) The packet contained a "Right to Representation" information guide and a document titled "Important Notice About Representation." (R. 59–64.) At the hearing, the ALJ first spoke to Ogden about her right to have representation and Ogden informed the ALJ that she never received the packet because it was sent to her old address. (R. 26–27.) The ALJ explained:

> Okay. So, before we make a decision about whether to proceed today, whether to get a brief continuance to further pursue the matter of getting a representative you should understand there are things a representative – excuse me, can do for you that I cannot do. That individual can help you gather and present the strongest possible evidence and arguments according to your claim. And that individual can give you advice about your claim. These are things I cannot do. My job remains the same whether or not you're represented. I have to make sure I get all of the information I need to have to make a decision in this case, but I cannot act as your advocate or representative. And I cannot give you advice about your claim. Do you wish to proceed today or would you like some brief additional time to pursuing getting a representative?

(R. 28.) Ogden elected to proceed with the hearing. (*Id.*) The ALJ also told her:

> You should also understand that if it is my determination after the hearing today that the evidence does not meet the standards for proving disability under the act and regulations while you will have a opportunity to appeal that decision you will not have an opportunity to return to me and tell me you changed your mind and wish to have a hearing with a representative. Okay?

(R. 29.) After the additional warning, Ogden's decision remained unchanged.

4

ii

Ogden testified about K.M.R.'s learning and behavior difficulties. (R. 31–33.) Ogden explained that K.M.R. is behind with her reading level in school (R. 32), she won't focus, twirls her hair, constantly picks at her fingers and storms away when her mother calls her name (R. 33). She further explained that it is difficult to get a stable babysitter because "people have such a hard time dealing with [K.M.R.]." (R. 36.) Finally, she testified that K.M.R. is calmer and she will "sit and…listen" when she is on medication. (R. 33.) K.M.R. switched healthcare providers and is waiting to restart the medication with her new provider, Omni Healthcare. (R. 31.) Next, K.M.R. testified that she enjoys school, gets along with other students and plays games with them. (R. 34–35.)

iii

In conjunction with Ogden's testimony, the ALJ considered K.M.R.'s office treatment and medical records from Pinebrook Family Services (R. 143–144, 192–194), a Consultative Examination Report from Janet Sebes, Ph.D. (R. 148–151), and a Disability Determination Explanation by Thomas Fink, Ph.D. (R. 44).

1

In August 2012, Alicia Wagner, B.A. conducted a mental status exam at Pinebrook Family Services. (R. 143–144.) Wagner noted that K.M.R. had fleeting eye contact but was smiling, happy, reactive and her mood was euthymic. K.M.R. had a clear thought process, her cognition was intact, and her interpersonal style was described as friendly and distant. (*Id.*) In December 2012, Harold Heckman, M.D. conducted a psychiatric evaluation at Pinebrook. (R. 192–194.) He noted that K.M.R.'s

speech pronunciation "was slightly less than a usual four year old" but that she was "understandable." (R. 192.) He concluded that her thinking process was coherent and relevant and her intellectual potential was average. (R. 193.) Further, her memory for recent events seemed good. (R. 193.) Although Dr. Heckman observed that K.M.R. had poor impulse control, she "was reasonably cooperative with the interview…." (R. 193.)

2

In February 2013, Dr. Sebes evaluated K.M.R. and prepared a Consultative Examination Report. (R. 148–151.) When analyzing K.M.R.'s ability to acquire and use information, Dr. Sebes noted that K.M.R. did not know her alphabet, all of the colors or shapes but Ogden told Dr. Sebes that they had been working on those skills and K.M.R. was improving. (R. 150.) Ogden indicated that when on medication, K.M.R. is able "to sit long enough to do letters and numbers" (R. 148), her concentration has improved, and Dr. Sebes noted her concentration "appeared to be within normal limits" (R. 149). Ogden also stated that K.M.R. "has an exceptional memory" and Dr. Sebes concluded that K.M.R.'s memory seemed to be visual in nature. (R. 149.)

When analyzing K.M.R.'s ability to interact and relate with others, Dr. Sebes noted that K.M.R. is aggressive when limits are set but Ogden told Dr. Sebes that K.M.R. can get along with adults and peers "if she wants to." (R. 150.) During the evaluation however, Dr. Sebes observed that K.M.R. was "mostly cooperative to her mother's stated surprise." (R. 149.) She also told Dr. Sebes that K.M.R.'s sleep and behavior "is somewhat improved with medication." (R. 149.)

6

In his March 2013 Disability Determination Explanation, Thomas Fink, Ph.D. found that K.M.R. has less than marked limitations in the domain of acquiring and using information. (R. 44.) Dr. Fink noted that although K.M.R. has a "history of learning delays…she is cognitively intact." (R. 44.) He further found that K.M.R. has less than marked limitations in the domain of interacting and relating with others. (R. 45.) He acknowledged that K.M.R. was "oppositional in the home environment" but that she was "friendly…and cooperative at [the evaluation.]" (R. 45.) Although K.M.R.'s speech was difficult to understand, she was "able to communicate adequately." (R. 45.)

## II

The Court reviews *de novo* those portions of the R&R to which Ogden has objected. *See* 28 U.S.C. § 636(b)(1); *see also Brown v. Astrue,* 649 F.3d 193 (3d Cir. 2011). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c). In reviewing the ALJ's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the ALJ. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Rather, the Court reviews the ALJ's findings to determine whether they were supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552 (internal quotations omitted). "It is 'more than a mere scintilla but may be somewhat less than a

preponderance of the evidence.'" *Id.* (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the decision of the ALJ is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The ALJ's decision "must therefore present a sufficient explanation of the final determination in order to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding." *D'Angelo v. Colvin*, No. 14-6594, 2016 WL 930690, at *1 (E.D. Pa. Mar. 11, 2016) (citing *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981)). The decision need only discuss the most relevant evidence concerning a claimant's disability, "but it must provide sufficient discussion to allow the reviewing Court to determine whether its rejection of potentially significant evidence was proper." *Id.* (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008)).

III

Claimants "have a statutory and regulatory right to counsel at [a social security disability] hearing." *Phifer v. Comm'r of Soc. Sec.*, 84 F. App'x 189, 190 (3d Cir. 2003). Once a claimant receives notice of this right, she can waive it if she does so knowingly and intelligently. *Id.* If a claimant does not waive this right knowingly and intelligently, remand is not automatic. *Id.* Remand is only appropriate when "the lack of counsel prejudices a claimant or where the lack of counsel leads to an administrative proceeding marked by unfairness." *Id.* at 190–91 (citing *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980)).

Ogden states that "there is a serious question as to whether [she] knowingly waived her right to counsel." (Pl.'s Br., 10–12.) At the hearing, she informed the ALJ

that she never received the packet informing her about her right to counsel. As a result, Ogden asserts that at that point, the ALJ "was required to explain the right to representation" and to provide her with the packet and give her an opportunity to read the letter informing her of the right. (*Id.*) Ogden bases her argument on the Social Security Administration's internal procedural manual, The Hearing, Appeals, Litigation and Law Manual ("HALLEX").

First, the record makes clear that Ogden knowingly waived her right to counsel. The ALJ told Ogden that she had a right to counsel and explained to her the benefits of having counsel. (R. 26–27.) She further explained that as the judge, she could not give Ogden advice about her claim. (*Id.*) When asked if she wished to proceed with the hearing that day or be allowed time to obtain a representative, Ogden stated that she wanted to proceed. (*Id.* at 28.) The ALJ further told Ogden that if the social security benefits determination was unfavorable to her, she could not return to the ALJ and change her mind about having a hearing with a representative. (*Id.*)

Second, the HALLEX does not have the force of law and it creates no judicially enforceable rights. *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007); *see also Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) ("But the Claims Manual is not a regulation. It has no legal force, and it does not bind the SSA."). If a claimant bases her argument on a violation of a HALLEX provision, she must show that she was prejudiced by the violation. *Del Valle v. Astrue*, No. 10-2330, 2011 WL 4470709, at \*6 (E.D. Pa. Sept. 23, 2011); *Thompson v. Astrue*, No. 09-3383, 2010 WL 1718212, at \*6 (E.D. Pa. Apr. 27, 2010). The Magistrate Judge concluded that Ogden did not show that she was prejudiced because the ALJ explained the benefits of obtaining a

representative and offered her a continuance. (R&R, 6.) Further, the administrative procedure was not marked by inequities—the ALJ requested and obtained updated records from Pinebrook Family Services and Lehigh Valley Hospital before issuing a decision. (R&R, 6.)

In her first objection, Ogden again argues that the HALLEX violation caused her to unknowingly and unintelligently waive her rights. (Pl's. Objs., 2.) Ogden's argument fails because she has not demonstrated prejudice. In her objection, she contends that she was prejudiced because "had she known of her ability to obtain counsel without advance payment, she could have retained a representative who would have assisted her in developing the evidence, obtaining opinions from her daughter's physicians/therapists, and presenting her testimony at the hearing." (*Id.*) As Magistrate Judge Hart noted, her argument is "true, in a general sense" (R&R, 6), but Ogden does not point to nor does the Court find any inequities during the administrative hearing. In fact, the ALJ sent requests for additional medical records (R. 23) and told Ogden to write to the ALJ if she wanted to add anything that she forgot to mention at the hearing (R. 38).

IV

To determine whether a child is disabled for the purpose of receiving SSI, an ALJ uses a three-part analysis. 20 C.F.R. § 416.924. First, the ALJ considers whether the child is engaged in substantial gainful activity. *Id.* § 416.924(b). Second, the ALJ considers whether the child has "a medically determinable impairment(s) that is severe." *Id.* § 416.924(c). Third, the ALJ considers if the child has an impairment or combination of impairments that "meet, medically equal, or functionally equal . . . the

severity of a set of criteria for an impairment in the listings . . . ." *Id.* § 416.924(d). To make a functional equivalence determination, the ALJ assesses a child's functioning in terms of six domains including, relevant here, acquiring and using information, *id.* § 416.926a(g), and interacting and relating with others. *Id.* § 416.926a(i). A child will be declared "disabled" and thus entitled to receive SSI benefits only if she has an impairment or combination of impairments resulting in "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain . . . ." *Id.* § 416.926(a).

A limitation that is "extreme" is one that interferes "very seriously" with the ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3). A "marked" limitation is one that "interferes seriously" with the ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). Such a limitation is "more than moderate" but "less than extreme." *Id.* When evaluating the effects of a child's impairment on her functioning, the Commissioner considers factors including how the child's functioning compares to the functioning of children of the same age without impairments, the combined effects of multiple impairments and how well the child can initiate, sustain and complete activities. 20 C.F.R. § 416.924a(b).

A

In her brief in support of her request for judicial review of the ALJ's decision, Ogden contends that after reviewing Dr. Sebes' report, the ALJ erred in failing to find that K.M.R. exhibited marked impairments in the domain of acquiring and using information. Under the Social Security regulations, this domain considers how well a claimant acquires and learns information and uses the information learned. 20 C.F.R.

11

§ 416.926a(g). The regulation provides examples of limited functioning in the domain of acquiring and using information including: a lack of "understanding of words about space, size, or time"; inability to "rhyme words or the sounds in words"; "difficulty recalling important things learned in school yesterday"; "difficulty solving mathematics questions or computing arithmetic answers" and speaking "in short, simple sentences and hav[ing] difficulty explaining what you mean." *Id.* § 416.926a(g)(3).

The ALJ acknowledged Dr. Sebes' report which explained that K.M.R. did not know her alphabet or all her colors and shapes. (R. 16.) The ALJ also credited Ogden's statement that K.M.R. was behind in her reading level. (R. 16.) Finally, the ALJ mistakenly credited Dr. Fink's characterization that K.M.R. was "cognitively intact" to Dr. Sebes. (R. 16.) After reviewing "all of the evidence" (R. 9) however, the ALJ found a less than marked limitation. (R. 16.) The R&R addressed the citation mistake and Judge Hart determined that the ALJ did not discredit Dr. Sebes' report, rather, the ALJ reviewed all of the evidence, including Dr. Fink's observation that K.M.R. was cognitively intact. (R&R, 8.) In her objection, Ogden argues she never alleged that K.M.R. suffered from a cognitive impairment "or intellectual disability (formerly called mental retardation)" and the R&R, like the ALJ's decision also "disregards Dr. Sebes' opinion that K.M.R.'s 'ability to learn appears to be compromised.'" (Pl's. Objs., 5.)

The ALJ is not required to "discuss in [her] opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). Although K.M.R. did not know her alphabet or all her colors and shapes, Dr. Sebes noted that Ogden and K.M.R. were working on those skills and K.M.R. was improving. (R. 150.) Dr. Sebes also reported that K.M.R. "has an exceptional memory" (R. 149), consistent

12

with Dr. Heckman's opinion (R. 193). Finally, Alicia Wagner, B.A. observed that K.M.R. had a "clear thought process" and her "cognition was intact." (R. 143–144.) The Court will overrule Smallwood's objection to the R&R's finding that the ALJ's determination in the domain of acquiring and using information is supported by substantial evidence.

B

Ogden similarly contends that the ALJ failed to find that K.M.R. exhibited marked impairments in the domain of interacting and relating with others. Under the Social Security regulations, the domain of interacting and relating with others considers how well a child is able to initiate and sustain emotional connections with others, cooperate with others, comply with rules, and interact and relate with others. 20 C.F.R. § 416.926a(i). Further, the domain examines the speech and language skills of the child and their ability to speak intelligibly. *Id*.

The ALJ credited Dr. Sebes' report which indicated that K.M.R. was aggressive when limits were set and that although she is attached to her mother, she can be aggressive towards her. (R. 18.) The ALJ further credited Dr. Sebes' observation that K.M.R. was cooperative during the examination. (R. 18.) In her brief in support of her request for judicial review of the ALJ's decision, Ogden once again contends that after reviewing Dr. Sebes' report, the ALJ should have found a marked limitation in this domain. (Pl.'s Br., 13–14.) Magistrate Judge Hart found that the ALJ's decision was supported by substantial evidence and cited to additional observations of K.M.R.'s behavior made by Pinebrook's Alicia Wagner, B.A. and Dr. Fink's Disability Determination Explanation. (R&R, 9.) In her objection, Ogden takes issue with the

13

R&R's reliance on the observations from Pinebrook Family Services because it "does not mention other findings of the clinicians at Pinebrook, who noted that K.M.R. continued to be defiant, was 'still very hyperactive, impulsive and has much difficulty sitting still'…." (Pl's. Objs., 6.)

The Court finds that when the record is viewed as a whole, substantial evidence supports the ALJ's conclusion that K.M.R. had a less than marked limitation in interacting and relating with others. The record contains both positive and negative aspects of K.M.R.'s behavior. On the negative side, K.M.R.'s interpersonal style was described as "distant" (R. 144), she is aggressive when limits are set (R. 150), and her "hyperactivity seems to lead to more discipline measures than is needed" (R. 194). On the positive side, K.M.R. appeared to be smiling, happy, reactive and her mood was euthymic during an evaluation at Pinebrook. (R. 143–144.) During a separate evaluation with Dr. Sebes, K.M.R. was "mostly cooperative." (R. 149.) Again, during her March 2013 evaluation with Dr. Fink, K.M.R. was "friendly…and cooperative." (R. 45.)

The ALJ's decision sufficiently explained her final determination, an explanation that was supported by substantial evidence. The Court finds no basis to set aside any aspect of her decision.

An appropriate order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.